UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| MIRTA NIDIA GALDAMEZ, | ) | Case No. ED CV 13-00630-DFM |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER |
| | ) | |
| CAROLYN COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Mirta Nidia Galdamez appeals from the denial of her applications for Social Security benefits. On appeal, the Court concludes that the Administrative Law Judge ("ALJ") stated sufficiently clear and convincing reasons to reject Plaintiff's testimony regarding her symptoms. The ALJ also properly determined that Plaintiff could perform her past work as generally performed in the national economy. Therefore, the Court affirms the ALJ's decision.

///
///
///
///

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her applications for disability insurance and supplemental security income benefits on March 8, 2010, alleging disability beginning May 18, 2008. In an unfavorable opinion, the ALJ concluded, based upon the testimony of a medical expert ("ME") and a vocational expert ("VE"), that Plaintiff's residual functional capacity ("RFC") would allow her to perform her past relevant work as a quality-control supervisor both as generally performed and as actually performed by Plaintiff. Administrative Record ("AR") 11-20.

# II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in (1) assessing Plaintiff's credibility and (2) concluding that Plaintiff was capable of performing her past relevant work at Step Four of the sequential evaluation. See Joint Stipulation ("JS") at 4.

# III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court

2

"must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.

## DISCUSSION

### A.  The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly consider Plaintiff's credibility. JS 17. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for

3

discrediting a claimant's complaints. <u>Robbins</u>, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Reddick</u>, 157 F.3d at 722 (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. <u>Id.</u> (citations omitted).

In finding Plaintiff less than fully credible concerning her subjective complaints of pain and disabling symptoms, the ALJ stated in relevant part as follows:

> The claimant stated that she spoke, wrote and read limited English. However, she has been in the country for 26 years, she has worked as a supervisor, and as well as at U.C. Riverside. At one point during the hearing, she answered questions before the interpreter was able to translate and ask her the specific question. I also note that she indicated on her application that she read, wrote and spoke English. When I asked her about her English capabilities, she said that she understood English, but that when she speaks she might get her words mixed up. She also said that she read some English and would recognize words like lumbar. I asked if she would be able to read a list of simple instructions and she answered it would depend on the specific list.

AR 19.

4

The ALJ provided clear and convincing reasons for her adverse credibility finding. As noted by the Commissioner, the Ninth Circuit has determined that an ALJ may take into account a claimant's inconsistent statements about her English language proficiency in making a credibility determination. See, e.g., Flores v. Colvin, --- F. App'x ---, 2013 WL 5861981, at *2 (9th Cir. 2013) (finding that ALJ offered clear and convincing reasons for adverse credibility finding that claimant could understand basic verbal English where claimant was taking courses in English and math and worked for 12 years in grocery store where he "was required to converse, at least to some degree, in English with his supervisors, co-workers, and customers"); Le v. Astrue, 318 F. App'x 552, 555 (9th Cir. 2009) (upholding ALJ's credibility finding where, among other reasons, "the ALJ noted contradictory statements regarding Le's literacy and ability to communicate in English"); see also Robles v. Astrue, 2011 WL 3443956, at *5 (C.D. Cal. 2011) (holding that ALJ properly considered Plaintiff's "contradictory statements regarding his facility with the English language").

Here, Plaintiff's statements at the administrative hearing regarding her facility with English conflicted with other evidence in the record, such as her written statements on her benefits applications that she could read, write and speak English and the fact that she answered questions the ALJ posed to her before the interpreter was able to translate. An ALJ may employ ordinary techniques of credibility evaluation, such as noting inconsistent statements made by the claimant. Smolen, 80 F.3d at 1283-84 & n.8. The ALJ's finding that Plaintiff gave conflicting statements regarding her English language skills was a rational interpretation of the evidence, and therefore must be upheld by this Court. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also noted that Plaintiff stated that she is able to perform many activities of daily living, such as caring for her elderly roommate, driving,

5

knitting, reading, helping in the kitchen, and self-grooming. AR 15-16. Plaintiff also testified that she tried to stay active, such as by doing exercises and taking a computer class near her home. AR 15-16 (citing AR 46-47). Although a claimant "does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), the ability to perform certain activities of daily life can support a finding that the claimant's reports of her impairment are not fully credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989))).

In addition, the ALJ extensively summarized the medical evidence of record, which did not support Plaintiff's claims of disabling symptoms. AR 15-18. For example, the examining consultative orthopedic physician determined that Plaintiff was capable of a full range of medium work and the ME, on whose opinion the ALJ heavily relied, determined that Plaintiff was able to perform light work. See AR 45, 206-210. Although a lack of objective medical evidence may not be the sole reason for discounting a claimant's credibility, it is nonetheless a legitimate and relevant factor to be considered. Rollins, 261 F.3d at 857. Thus, the lack of medical evidence in the record to support Plaintiff's claims, in addition to Plaintiff's inconsistent statements regarding her English language proficiency and her activities of daily living, provided sufficient reasons to support the ALJ's adverse credibility determination.

Plaintiff also contends that the ALJ erred in failing to specifically address a third- party report provided by a friend, Hermelia Cisneros. JS 21-22 (citing AR 161-68). A lay witness can provide testimony about a claimant's symptoms

and limitations. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. Lewis, 236 F.3d at 512.

Here, Cisneros's report of her observations of Plaintiff's abilities and daily activities essentially mirrored Plaintiff's testimony, which the ALJ properly rejected as not being fully credible, as discussed in detail above. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Valentine v. Comm., 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). Because the ALJ appropriately rejected Petitioner's statements, the ALJ could have also rejected Cisneros's as not fully credible because they were substantially similar to Plaintiff's.

Furthermore, unlike lay testimony, there is no controlling precedent requiring an ALJ to explicitly address written statements, such as Cisneros's in this case. Indeed, it is clear that, in interpreting the evidence and developing the record, an ALJ is not required "to discuss every piece of evidence." See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor

7

probative."); see also Molina, 674 F.3d at 1114 ("We have not, however, required the ALJ discuss every witness's testimony on an individualized, witness-by-witness basis.").

On appellate review, this Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility. Smolen, 80 F.3d at 1284. The written record reflects that the ALJ did just that. As previously noted, it is the responsibility of the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604.  It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony.

In sum, the Court finds that the ALJ reasonably and properly discredited Plaintiff's subjective testimony regarding the severity of her symptoms as not being wholly credible. Reversal is not warranted on this basis.

**B.**     **The ALJ Properly Determined That Plaintiff Was Capable of Performing Her Past Relevant Work as Generally Performed**

Plaintiff also contends that the ALJ erred in determining that she was capable of performing her past relevant work as a quality-control supervisor. Plaintiff argues that the requirements of the job of quality-control supervisor, as listed in the Dictionary of Occupational Titles ("DOT"), are beyond her physical, educational, and English language abilities. JS 4-17.

The ALJ's determination was made at step four of Social Security's five-step disability determination process. At step four, the claimant has the burden of showing that she can no longer perform her past relevant work. Pinto v.

8

1   Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e),

2   416.920(e)). "The claimant has the burden of proving an inability to return to

3   [her] former type of work and not just to [her] former job." Villa v. Heckler,

4   797 F.2d 794, 798 (9th Cir. 1986). Although the burden of proof lies with the

5   claimant at step four, the ALJ still has a duty to make the requisite factual

6   findings to support her conclusion. SSR 82–62, 1982 WL 31386, at *4 (1982).

7   This is done by looking at the "residual functional capacity and the physical

8   and mental demands" of the claimant's past relevant work. 20 C.F.R. §§

9   404.1520(e), 416.920(e). If the ALJ determines that the claimant can perform

10  either the actual functional demands and job duties of a particular past relevant

11  job, or as generally required by employers in the national economy, then the

12  claimant is not disabled. Pinto, 249 F.3d at 845; 20 C.F.R. § 404.1520(f).

13      In a report dated April 28, 2010, Plaintiff indicated that she worked as a

14  quality-control supervisor at a plastics company from 1993 to 2001. AR 134.

15  She described the duties of her job as "supervise personnel, quality control,

16  count production, time cards (adding hours)." AR 135. She also stated that she

17  walked and/or stood six to eight hours per eight-hour workday and

18  occasionally moved items weighing anywhere from two to 25 pounds. Id.

19  Therefore, as described by Plaintiff, her past relevant work as a quality-control

20  supervisor was performed at the light exertional level. See 20 C.F.R. §§

21  404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5 (1983) (light work

22  involves lifting 20 pounds occasionally and 10 pounds frequently and

23  standing/walking up to six hours in an eight-hour workday).

24      The ALJ determined that Plaintiff retained the RFC to perform light

25  work with the following relevant limitations: "occasionally lift/carry and

26  push/pull up to twenty pounds, frequently lift/carry and push/pull up to ten

27  pounds, stand/walk for two hours, and sit for about six hours out of an 8-hour

28  work day." AR 15. The ALJ then asked the VE a hypothetical question which

9

included those functional limitations, Plaintiff's sixth-grade education, and a limited ability to speak, read, and write in English. AR 52-53. Based upon this hypothetical, the VE testified that Plaintiff was capable of performing her past relevant work as a quality-control supervisor (DOT 559.134-010) both as Plaintiff actually performed it and as generally performed. AR 52-53. The VE noted that the job of quality-control supervisor is generally performed at the sedentary level but that Plaintiff actually performed it at the light level. AR 52.

The Commissioner concedes that the VE erred in concluding that Plaintiff was capable of performing her past work as actually performed at the light exertional level because the ALJ's RFC assessment limited Plaintiff to standing and/or walking for no more than two hours, which is incompatible with Plaintiff's report that she stood and/or walked for up to six hours in an eight-hour workday. JS 14. However, the Commissioner contends that Plaintiff is capable of performing her past work as generally performed in the national economy. The ALJ's findings under step four of the sequential evaluation process, as well as other evidence in the record, support the determination that Plaintiff is capable of performing her past relevant work as generally performed. The hypothetical that the ALJ posed to the VE properly incorporated the relevant medical evidence in the record as well as Plaintiff's past relevant work as a quality-control supervisor. AR 52-54. Based upon this hypothetical, the VE testified that Plaintiff could perform her past relevant work, even if she were limited to no more than two out of eight hours of standing and walking and lifting/carrying ten pounds frequently and 20 pounds occasionally. AR 53. Having provided a hypothetical that was supported by substantial evidence, the ALJ was entitled to rely on the VE's testimony in reaching her disability determination. See 20 C.F.R. § 416.960(b)(2) (ALJ may rely on a VE's "expertise and knowledge concerning the physical and mental demands of a claimant's past relevant work, either as

the claimant actually performed it or as generally performed"); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (affirming ALJ's reliance on VE's testimony that was based on hypothetical that was supported by substantial evidence in the record).

As provided in the Social Security regulations, if the claimant can perform her past relevant work as actually performed or as generally performed, the Commissioner will find that she is not disabled. See Pinto, 249 F.3d at 845; see also 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3), 416.920(f), 416.960(b)(3). Although the ALJ erroneously concluded that Plaintiff could perform her past relevant work as actually performed, any error was harmless because the ALJ also correctly concluded, based upon the VE's testimony, that Plaintiff could perform her past relevant work as generally performed in the national economy. See Pinto, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work as generally performed *and* as actually performed.") (emphasis in original).

Plaintiff also argues that the ME's testimony demonstrates that she is incapable of performing her past relevant work either as actually performed or as generally performed in the national economy. JS 8. At the administrative hearing, the ME at first testified that Plaintiff could only occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds. AR 43. Based upon this initial testimony, Plaintiff contends that the ME concluded that Plaintiff was incapable of performing even a full range of sedentary work, but that the ALJ improperly pressured the ME into changing his testimony. JS 11. However, from a review of the administrative hearing record, it is clear that the ALJ was trying to clarify the ME's testimony:

ALJ:  You're disagreeing quite substantially with the orthopedic's consultative examination, in that he gave a – pretty much a medium RFC. You're giving a less than sedentary.

11

1  ME:  That's right.

2  ALJ: Can you tell me why?

3  ME:  Yes. Because I don't think she can do medium.

4  ALJ: Why?

5  ME:  Because she would have pain.

6  ALJ: Okay.

7  ME:  [Inaudible]

8  ALJ: So you think her back is sufficient that she goes down to a less
9         than –

10  ME:  She's 52 years old. She's got degenerative joint disease, and she's
11         overweight. I don't think she could do it.

12  ALJ: Okay. But, I mean, you don't think she could do light?

13  ME:  <u>She can do light.</u>

14  ALJ: Okay. But you gave me a less than sedentary, didn't you?

15  ME:  Oh, I did?

16  ALJ: Didn't you give me 10 and 10?

17  ME:  Well, <u>I think she could do light</u> – 10 and 20. 10 and 10, yes. So I
18         said – did I say 10 and 10?

19  ALJ: Yeah, you did say 10 and 10, but "light" would be 10 and 20.

20  ME:  "Light" would be – well, give her 20.

21  AR 44-45 (emphases added).

22      It is clear from reading the testimony in context that the ME actually

23  meant to state that Plaintiff was capable of performing light work, but

24  misstated the lifting and carrying requirements of light work as 10 pounds

25  occasionally, rather than 20 pounds. Therefore, the ME's testimony does not

26  support Plaintiff's contention that she is not capable of performing her past

27  relevant work as generally performed.

28      Finally, Plaintiff contends that, given her sixth-grade education and

12

limited English skills, it would be impossible for her to perform the occupation of quality-control supervisor as described in the DOT, as the DOT requires more advanced language skills. As noted above, supra at 5, the ALJ found that Plaintiff overstated the limits of her English language skills, a finding well-supported by the record. Moreover, Plaintiff herself stated in her work history report that, as a quality-control supervisor, she supervised 20 to 25 people at a time, counted production, added hours on time cards, and hired and fired employees. AR 135. Moreover, she maintained that position for eight years. AR 134. Thus, it is clear that her limited education and English did not prevent her from performing the job as she actually performed it. In addition, as noted by the Commissioner, see JS 15-16, the fact that Plaintiff only has a sixth-grade education does not necessarily mean that she did not possess the education required of her job as generally performed. The DOT defines General Educational Development ("GED") as "embrac[ing]those aspects of education (formal and informal) which are required of the worker for satisfactory job performance," but also notes that, while this GED is normally obtained in high school or college, "it may be obtained from experience and self-study." DOT, App. C, 1991 WL 688702 (1991). Plaintiff's eight years of experience as an apparently competent quality-control supervisor have provided just such an informal education.

In sum, the ALJ properly determined that Plaintiff is capable of performing her past relevant work as it is generally performed in the national economy, and Plaintiff is therefore not entitled to relief with respect to this claim of error.

///

///

///

///

# V.

## CONCLUSION

The ALJ's denial of Plaintiff's applications for Social Security benefits was supported by substantial evidence in the record and contained no legal error. Accordingly, the Court AFFIRMS the Commissioner's decision.

Dated:  January 27, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge